IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AVM TECHNOLOGIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 10-610-PD |
| v. | ) |
| | ) |
| INTEL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF AVM TECHNOLOGIES, LLC'S MOTION TO STAY PROCEEDINGS FOR NINETY DAYS TO ENABLE AVM TO ENGAGE NEW COUNSEL**

Plaintiff AVM Technologies, LLC ("Plaintiff" or "AVM"), respectfully moves the Court to stay this patent case for 90 days to afford AVM the opportunity to find new litigation counsel as well as new Delaware counsel, as required under the law and the Delaware Local Rules.

AVM believes that a 90-day stay is warranted given:

(1) AVM's formidable task of finding replacements for both its lead counsel and local counsel who are (a) qualified to litigate a complex patent case involving dynamic logic circuits of computer microprocessors; and (b) who are not ethically-conflicted from opposing Defendant Intel due to a current or former representation of Defendant Intel;

(2) the voluminous amount of information already produced during discovery and the significant time replacement counsel likely would require to review and analyze that information; and

(3) the need for replacement counsel to step into the shoes of current counsel to (a) prepare for the critical patent claim-construction hearing and (b) defend third-party, Plaintiff-aligned witnesses recently subpoenaed by Defendant Intel.

Without a stay, the hardships and inequities that AVM would suffer will be extreme. Ultimately, because a corporate party like AVM may *not* appear in propia persona (and may not appear in the Judicial District of Delaware without local counsel), AVM could be subject to sanctions if denied the necessary time to find *two sets* of replacement attorneys. More

{00509846;v1}

immediately, AVM faces the departure of its lawyers just before the critical patent claim-construction hearing, where the scope of the claims of AVM's patent-in-suit will be decided. And, to make matters worse, in the week since Plaintiff's lead and local counsel informed Defendant Intel of their intention to withdraw, Intel has not only refused to agree to a stay, but has aggressively pushed ahead with discovery. For example, since learning of Covington's intent to withdraw, Intel has: (a) served a deposition subpoena for the third-party co-inventor of the patent-in-suit; (b) pressed the third-party patent attorney who wrote the patent-in-suit, and his former law firm, for production of documents and deposition dates; and (c) produced approximately 70,000 new documents – roughly the same number of documents that Intel had produced during the previous five months of discovery. At this point, AVM cannot proceed without finding and engaging replacement counsel who are able to grapple with the intricacies of the case and a dogged opponent looking to exploit a perceived weakness.

In contrast to the hardship AVM would suffer without a stay, Intel would suffer few injuries if the case is stayed for 90 days. Although any stay will impose a delay, such a delay would not unduly prejudice Intel, here, given: (1) the relative youth of the case (the complaint is only 9-months-old; Intel's counterclaims are only 7-months-old; discovery commenced only 5 months ago); and (2) the progress the parties have made, thus far, in preparing this case for claim-construction and trial. Furthermore, aside from an anticipated claim-construction hearing, the motion of AVM's counsel to withdraw, and *this* motion, no other hearings have been scheduled, and no substantive motions are pending.

Finally, a stay would provide the Court with an opportunity to economize judicial resources. While an unrepresented corporate party may not be permitted to appear, its officers and employees may still oppose default proceedings and entangle the Court in protracted

procedural hurdles should default proceedings arise.

In summary, it would be just and equitable to allow AVM to mitigate the hardships brought on by the departure of its lawyers by giving it sufficient time to find replacement counsel and allow those replacement counsel to come up to speed on the case before they are required to appear for a critically important claim construction hearing or important third-party depositions.

## I.

## RELEVANT BACKGROUND

### A.  AVM's Attempts to Obtain Intel's Agreement for a Stay

AVM recently learned that its lead litigation counsel intended to withdraw from this action. On March 31, 2011, lead counsel, Covington & Burling, LLP ("Covington"), informed AVM's CEO, Mr. Joseph Tran, that Covington intended to withdraw.

Shortly thereafter, on April 7, 2011, Covington informed Defendant Intel's counsel of this intent. (See Decl. of Richard Rainey in Support of AVM's Mot.to Stay ¶ 4 [hereinafter "Rainey Decl."].) At this time, Covington asked Intel to agree to a 90-day stay to permit AVM the time it needs to obtain new counsel. (Rainey Decl. ¶ 5.) Covington repeated AVM's request in an April 12, 2011 email to Intel's lead counsel. (Rainey Decl. ¶ 6.)

Intel refused. On April 12, 2011, through its lead counsel, Intel informed AVM that it would not agree to stay the action. (Rainey Decl. ¶ 7, Exh. A.) Intel's stated reason: Intel claimed it needed to know the reason why Plaintiff's lead counsel wished to withdraw from representing its client, AVM, before Intel could agree to a stay. (Id.) Covington explained that they could not explain why they were withdrawing, due to "obvious privilege reasons." (Rainey Decl., Exh. A.) However, on April 13, 2011, Covington sent another email to Intel's lead counsel, asking if Intel would accept a stay of some length less than 90 days. (Rainey Decl. ¶ 8,

Exh. A.) Intel's lead counsel rejected this request, writing:

> "To say the least, we have incomplete information about the reasons for your withdrawal (and otherwise what is happening on the AVM side). Therefore, we are not in a position to agree to a cessation of activity. Rather, we think that the amount of any delay should be determined by the Court, with input from both sides." (Rainey Decl. ¶ 9, Exh. A).

In a final attempt to appeal to Intel's civility,[1] AVM's local counsel, John G. Day of Ashby & Geddes, contacted Defendant's local counsel on April 13, 2011. (See Decl. of John G. Day in Support of AVM's Mot. to Stay ¶ 3 [hereinafter, "Day Decl."].) Mr. Day explained to Intel's local counsel that Covington sought to withdraw because of a breakdown in the relationship between it and Plaintiff AVM. (Id. ¶ 4.) AVM's local counsel also asked whether Intel would agree to a stay of any shorter length of time. (Id. ¶ 4.) On the next day, April 14, Intel again rebuffed AVM's request, explaining that Intel would not agree to a stay of any length of time. (Day Decl. ¶ 5.)

### B. Custody and Review of Documents Already Produced; Necessity of Pursuing Withheld Documents

Thus far, Plaintiff AVM has diligently pursued discovery from Intel. (See Rainey Decl. ¶ 10-13.) As a result, in five months of discovery, Intel has produced approximately 140,000 documents, totaling approximately 1.2 million pages relating to this litigation. (Rainey Decl. ¶ 10.) Interestingly, Intel has produced roughly half of these documents in the one week since it learned that AVM's counsel intended to withdraw. (Rainey Decl. ¶ 11.) The vast majority were produced subject to the stringent extant protective order. (See Protective Order [D.I. 37].) Accordingly, only "outside" attorneys and retained experts may review the documents in

---

[1] The parties have extended courtesies to one another in the past. For example, on August 5, 2010, AVM stipulated to extend time for Intel to respond to the original complaint by a month.

preparation for trial – AVM's employees may not access the materials, even to transfer the matter to replacement counsel.

Further, Defendant Intel produced certain information relating to the products AVM has accused of patent infringement by an even more restrictive method allowed by the Protective Order – making this information available on a single computer located in the New York City office of Defendant's lead counsel. (Rainey Decl. ¶ 12.) The computer data may only be accessed by counsel of record and expert consultants who must travel to that office and obtain prior authorization from Defendant's counsel. (Id.)

Although the parties have a number of disputes regarding the sufficiency of documents produced so far, (Rainey Decl. ¶ 13) any replacement counsel for Plaintiff will need to spend a significant amount of time to review and understand the discovery information already produced by Intel.

### C. Defense of Third-Party Witnesses and Documents Subpoenaed by Intel

After Covington informed Intel that the law firm intended to withdraw, Intel pressed more forcefully the pending subpoenas Defendant issued to third-party witnesses. Specifically, on the evening of April 8, 2011, hours after Covington disclosed counsel's intent to withdraw, Intel served a deposition subpoena on Mark Acuff, the co-inventor of the patent-in-suit. (Rainey Decl.¶ 14.) That subpoena set April 20, 2011, as the date on which Mr. Acuff must appear to be deposed. (Rainey Decl. ¶ 14, Exh. B.) Further, Intel continued to press the patent attorney who wrote the patent-in-suit, and his former law firm, to produce demanded documents and to appear for deposition. (Id. ¶ 15.)

---

(See Stip. to Extend Time to Move, Answer, or Otherwise Resp. to Compl. [Doc. # 6].)

### D. Youth of the Case; No Pending Motions (Except Covington's Motion to Withdraw) or Scheduled Hearings

This action to enforce AVM's patent was filed on July 16, 2010. Intel's answer and counterclaim was filed on September 9, 2010. Discovery has been on-going for approximately five months.

As of the filing date of this motion, no other motions (with the exception of the Motion to Withdraw) are pending. Indeed, there are no scheduled hearings at all. AVM anticipates that the next substantive hearing in this matter will be a patent claim-construction hearing that is likely to have a substantial impact on the outcome of this case.

Since learning of its counsel's intention to withdraw, AVM has sought replacement litigation and local counsel. AVM engaged Matthew Lapple – a solo practitioner based in California – to assist in its search for new lead litigation counsel and to assist in the preservation of Covington's attorney work product (and its transfer to replacement counsel). Although Mr. Lapple was admitted pro hac vice in this matter on April 12, AVM believes that this case is likely beyond the resources of any one attorney to prosecute against Defendant Intel.

## II.

## LEGAL STANDARD FOR MOTIONS TO STAY IN LIGHT OF WITHDRAWAL OF COUNSEL FOR A CORPORATE PARTY

### A. The Court Is Vested with Discretion to Stay a Case

This Court is fully vested with the discretion to stay a case on its docket. See Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3rd Cir. 1985) (holding that the decision to stay rests within the court's sound discretion). The Court's power to stay a proceeding "is incidental to the power inherent in every court to schedule disposition of the cases on its docket so as to promote fair and efficient adjudication." Gold v. Johns-Manville Sales Corp., 723 F.2d 1068,

1077 (3d Cir. 1983) (citing Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936)).

In general, district courts consider four factors in determining whether to stay a case: (1) the length of the stay required; (2) the "hardship or inequity" that the moving party would face if forced to go forward with the litigation; (3) the injury that a stay would inflict upon the non-movant; and (4) whether a stay will simplify issues and promote judicial economy. Landis v. North American Co., 299 U.S. 248, 254–55 (1936).

### B.  As a Corporate Party, AVM May Not Appear Except Through Counsel; Delaware Further Requires Association of Local Counsel

As a matter of law, corporate parties may not appear *in propria persona*; failure to engage qualified litigation counsel may subject a corporate party to sanctions – including default proceedings. See, e.g., Amazon.com, Inc. v. Citi Servs., Inc., No. 99-cv-543-GMS, D.I. 88, at 2 (D. Del. 2008) ("the court ... ordered the defendants to retain new counsel ... [and] noted that failure to do so could result in the entry of default judgment against them"); D. Del. LR 83.5(e) (noting that the failure to obtain Delaware Counsel in accordance with the local rules "shall subject the defaulting party to appropriate sanctions under D. Del. LR 1.3(a)").

Moreover, pursuant to the local rules of this Judicial District, a party represented by counsel outside Delaware *must* engage and associate with Delaware counsel to prosecute claims in this Judicial District. See D. Del. LR 83.5(d) ("Association with Delaware counsel required. Unless otherwise ordered, an attorney not admitted to practice by the Supreme Court of the State of Delaware may not be admitted pro hac vice in this Court unless associated with an attorney who is a member of the Bar of this Court and who maintains an office in the District of Delaware for the regular transaction of business ('Delaware counsel'). Consistent with CM/ECF Procedures, Delaware Counsel ... shall be required to file all papers. Unless otherwise ordered,

Delaware counsel shall attend proceedings before the Court.").

## III.

## ARGUMENT

### A. The Four Factors Favor Staying This Action

#### 1. The 90-Day Stay Requested Is Warranted by This Complex Case

This case is complex, dealing with a patent in the field of electrical engineering that relates to a particular kind of dynamic logic circuit used in computer microprocessors. Although many relevant documents have yet to be produced, the approximately 140,000 document that Defendant Intel has produced thus far are voluminous – but strictly controlled by a Court-issued protective order that restricts their review to certain attorneys and expert consultants. Moreover, because the next step in this patent suit is the all-important claim-construction, any replacement counsel for AVM will require a significant amount of time to review the documents produced, review previous counsel's work product, and prepare for oral argument.

#### 2. Hardship and Inequity Would Result without a Stay: Plaintiff AVM May Be Subject to Default Proceedings Because of Its Counsel's Withdrawal

As a matter of federal law and local Delaware rules, AVM, as a corporate party, may not appear in propria persona. If it is not given sufficient time to obtain replacement litigation and local counsel, it may be subject to sanctions – including the ultimate sanction, default proceedings. For a patent-owner litigant, there is no greater hardship than to suffer the "forfeiture" of its claims of infringement and, potentially, of the validity of its patent, because of the sudden withdrawal of its legal counsel.

### 3. By Contrast, Intel Would Not Suffer Injury If the Case Were Stayed

In comparison, any injury Intel would suffer would be negligible, by comparison. This case is a relatively young one (the complaint was filed only nine (9) months ago; Intel's counterclaims are only seven (7) months old), and discovery has only been on-going for five (5) months, yet the parties have been diligently pursuing discovery. Intel has already issued its third-party subpoenas; consequently, witnesses have been put on notice that they must preserve relevant information and prepare to be deposed. No lasting injury would inure to Intel if this case were suspended for a mere three months to permit AVM the opportunity to find counsel and rejoin the litigation on equal terms.

### 4. A Stay Would Promote Judicial Economy

Finally, by this request for a 90-day stay, Plaintiff AVM hopes to avoid successive motions to stay the case (as, for example, after replacement counsel are located). Granting AVM this stay should provide Plaintiff AVM with the time it needs both to locate replacement counsel and to familiarize those attorneys with the claims, asserted defenses, party documents, and third-party witnesses involved in this patent litigation.

On the other hand, should the Court deny AVM the necessary stay and potentially move AVM toward default proceedings, AVM's CEO intends to oppose any such proceedings.

Such a protracted, unproductive and unfair result can be avoided if the Court grants AVM the 90 days Plaintiff needs to find counsel to replace both Covington & Burling and Ashby & Geddes.

## IV.

## CONCLUSION

For all of the foregoing reasons, Plaintiff AVM respectfully requests that the Court grant Plaintiff's motion to stay further proceedings for the limited period of ninety (90) days to permit AVM to engage new lead counsel and new local counsel, and to further permit new counsel to familiarize themselves with the case.

          ASHBY & GEDDES

          /s/ *Andrew C. Mayo*

          John G. Day (I.D. # 2403)
          Lauren E. Maguire (I.D. # 4261)
          Andrew C. Mayo (I.D. # 5207)
          500 Delaware Avenue, 8th Floor
          Wilmington, Delaware 19899
          302-654-1888
          jday@ashby-geddes.com
          lmaguire@ashby-geddes.com
          amayo@ashby-geddes.com

          *Counsel for Plaintiff*

*Of Counsel*:

Matthew C. Lapple
LAPPLE IP LAW, P.C.
1801 Von Karman Avenue, 3rd Floor
Irvine, California 92612
949-756-4889
matt@lappleiplaw.com

Dated: April 19, 2011

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1.1.

I hereby certify that counsel for Plaintiff AVM Technologies, LLC made reasonable efforts to reach agreement on the attached motion with counsel for defendant, but that no agreement could be reached.

/s/ Andrew C. Mayo
---
Andrew C. Mayo

{00509846;v1}