## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| AVM TECHNOLOGIES, LLC,<br>a Delaware Limited Liability Company, | ) ) ) | C.A. No.  10-610-RGA |
| Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | **PUBLIC VERSION** |
| INTEL CORPORATION,<br>a Delaware Corporation | ) ) ) | |
| Defendant. | ) ) | |

### DEFENDANT INTEL CORPORATION'S MEMORANDUM IN SUPPORT OF ITS _DAUBERT_ MOTION TO EXCLUDE THE TESTIMONY OF LARRY EVANS

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

OF COUNSEL:

William F. Lee
Lauren B. Fletcher
Patrick M. Callahan
Adam S. Gershenson
WILMER CUTLER PICKERING
     HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel:  (617) 526-6000

David C. Marcus
WILMER CUTLER PICKERING
     HALE AND DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 443-5312

_Attorneys for Defendant Intel Corporation_

Dated:  October 31, 2012
Public Version Dated: November 8, 2012
1082151/35902

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL BACKGROUND .............................................................................2

        A.      The '547 Patent ...................................................................................2

        B.      Prior Interactions Between Mr. Tran and Intel ..................................3

                1.      The ████ License ...................................................................3

                2.      Mr. Tran's ████████████████████ .........................3

        C.      AVM's Lawsuit Against Intel ..............................................................4

        D.      Mr. Evans's Damages Opinion ............................................................4

                1.      Mr. Evans's Reliance on Intel's ████████ .........................5

                2.      Mr. Evans's Reliance on ████████████ Agreements .............5

                3.      Mr. Evans's *Georgia-Pacific* "Analysis" ..............................7

III.    ARGUMENT .....................................................................................................7

        A.      Mr. Evans Improperly Relied on Intel's ████████
                ████ To Calculate a Reasonable Royalty. ...........................................8

        B.      Mr. Evans Improperly Relied on ████████████
                ██████████████ To Calculate Damages..................................10

                1.      Mr. Evans Selected the ████████████ Agreements by
                        "Cherry Picking" ████████████████. .........................11

                2.      Mr. Evans Failed To Show That ████████████████
                        ██████████████. ....................................................12

        C.      Mr. Evans Ignored Relevant Damages Evidence. ..............................18

        D.      Mr. Evans's Opinion Is Not Reliable Simply Because He Purported To
                Provide a *Georgia-Pacific* Analysis. ..............................................20

IV.     CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Federal Cases**

*Apple Inc. v. Samsung Elecs. Co.,*
No. 11-CV-01846-LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012) ........................ 10

*Bourjaily v. United States,*
483 U.S. 171 (1983)............................................................................................................... 7

*DataQuill Ltd v. High Tech Computer Corp.*
No. 08cv543-IEG, 2012 WL 1284381 (S.D. Cal Apr. 16, 2012) .................................... 16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
509 U.S. 579 (1993)........................................................................................................... 1, 8

*Deere & Co. v. International Harvester Co.*
710 F.2d 1551, 1557 (Fed. Cir. 1983)................................................................................. 13

*In re Novatel Wireless Securities Litigation*
846 F. Supp. 2d 1104 (S.D. Cal. 2012).............................................................................. 10

*In re Paoli Railroad Yard PCB Litigation*
35 F.3d 717 (3d Cir. 1994).................................................................................................... 8

*IP Innovation LLC v. Red Hat, Inc.*
705 F. Supp. 2d 687 (E.D. Tex. 2010)........................................................................... 13, 19

*LaserDynamics, Inc. v. Quanta Comp., Inc.*
__ F.3d __, 2012 WL 3758093 (Fed. Cir. Aug. 30, 2012) .............................. 8, 13, 14, 18

*Lucent Technologies, Inc. v. Gateway, Inc.*
580 F.3d 1301 (Fed. Cir. 2009)....................................................................................*Passim*

*Oracle America, Inc. v. Google, Inc.*
798 F. Supp. 2d 1111 (N.D. Cal. 2011) .............................................................................. 19

*ResQNet.com, Inc. v. Lansa, Inc.*
594 F.3d 860 (Fed. Cir. 2010).................................................................................. 12, 13, 17

*Trell v. Marlee Electronics Corp.*
912 F.2d 1443 (Fed. Cir. 1990)............................................................................................ 15

*Uniloc USA, Inc. v. Microsoft Corp.*
632 F.3d 1292 (Fed. Cir. 2011)........................................................................................ 8, 10

*Unisplay S.A. v. American Electric Sign Co.*
69 F.3d 512 (Fed. Cir. 1995)............................................................................................... 18

*Whitserve, LLC v. Computer Packages, Inc.*
      Nos. 2011-1206, 2011-1261, 2012 WL 3573845 (Fed. Cir. Aug. 7, 2012)...................... 20

*Wordtech Systems, Inc. v. Integrated Networks Solutions, Inc.*
      609 F.3d 1308 (Fed. Cir. 2010)...................................................................................... 16

## **RULES**

Fed. R. Evid. 702 ........................................................................................................... 1, 7

## I.      INTRODUCTION

In July 2012, Defendant Intel Corporation ("Intel") filed a Motion for Summary Judgment of No Damages (D.I. 161).  In that motion, which is currently pending, Intel explained that summary judgment of no damages is appropriate because Plaintiff AVM Technologies, L.L.C. ("AVM") relies on only inadmissible and legally improper evidence to support its nine-figure damages claim.  But even if the Court does not grant summary judgment of no damages, the Court should preclude AVM's damages expert, Larry Evans, from testifying at trial because his expert opinion falls far short of the reliability standards required by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Mr. Evans has offered the opinion that AVM is entitled to ████████████ ████ in reasonable royalty damages for Intel's alleged infringement of U.S. Patent No. 5,859,547 ("the '547 patent").  But the methodology that Mr. Evans employed to calculate this amount is unreliable for at least three reasons, rendering his damages opinion inadmissible.

***First***, Mr. Evans relied on Intel's ████████████████ ████████████████████████████████████████ even though he agrees that ████████████████████████████ ██████████████████████████

***Second***, out of the more than ██ license agreements that Intel produced in this case, Mr. Evans ████████████████████ and improperly relied (wholly and only) on ████████████████████ agreements to support his opinion.  These agreements are not comparable to a hypothetical license to the '547 patent.  In fact, Mr. Evans "cherry picked ████████████ agreements without applying any discernible (let alone reliable) selection criteria.  Mr. Evans also failed to account for significant differences between the ███ ████████ agreements and a hypothetical license to the '547 patent or to establish any

technological or economic comparability between the ████████ agreements and the '547 patent.

***Third***, aside from the ████████ settlement agreements and ████████████,
Mr. Evans did not rely on a single other number or dollar amount to reach his damages
conclusion. Instead, he summarily dismissed other relevant evidence that might have lowered
his damages figure, including ████████████████████████████████
without explaining how that evidence would affect his opinion.

Put simply, Mr. Evans's damages opinion is the very type of unreliable and unsupported
expert testimony that Federal Rule of Evidence 702 and *Daubert* are designed to prevent. The
Court should therefore preclude Mr. Evans from offering any damages opinion at trial.

## II.  FACTUAL BACKGROUND

### A.  The '547 Patent

The '547 patent is titled "Dynamic Logic Circuit" and names Joseph Tran and Mark
Acuff as inventors. The '547 patent was originally assigned to Mr. Tran's former company
TransLogic Technology, Inc. ("TransLogic"). Mr. Tran later assigned the '547 patent to AVM.

According to AVM's own technical expert, ████████████████████████
██████████████████████████████████[1]  Rather, the '547 patent
purports to claim an improved type of "dynamic logic circuit." The patent describes a dynamic
logic circuit in which a delay element causes the precharge and evaluation transistors to be
activated at the same time. (Ex. 2, '547 patent at Abstract, 3:4-19, 6:20-26, 6:45-49.) The patent
refers to this feature as "simultaneous activation" or "overlap" of the precharge and evaluation
transistors. (*Id.* at 6:20-26, 6:45-49.) ████████████████████████████
████████████████████████████

---

[1] The exhibits cited herein refer to the exhibits attached to the October 31, 2012 Declaration of
Jordan L. Hirsch in Support of Intel Corporation's *Daubert* Motion to Exclude the Testimony of
Larry Evans.

**B.**   **Prior Interactions Between Mr. Tran and Intel**

　　**1.**   **The** █████████

In 1999, ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

　　**2.**   **Mr. Tran's** ████████████████████

In April 2006, ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

---

2 ███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

### C.    AVM's Lawsuit Against Intel

Mr. Tran is the sole employee of AVM.  He formed the company on June 3, 2010, and assigned the '547 patent to AVM on July 2, 2010.  Two weeks later, AVM filed this lawsuit. AVM alleges that two families of Intel's microprocessors—the Pentium 4 microprocessors and the Core 2 microprocessors—infringe the '547 patent.  Fact discovery closed in April 2012, and expert discovery closed in July 2012.  Intel's motion for summary judgment of no damages, which was filed in July 2012, is pending.  Trial is scheduled for February 2013.

### D.    Mr. Evans's Damages Opinion

On May 15, 2012, AVM submitted an expert report on damages from Larry Evans, an attorney and professional consultant.  (Ex. 8, Evans C.V.)  Mr. Evans has a degree in chemical engineering and a law degree, but no degree or experience in electrical engineering.



In his report, Mr. Evans offered the opinion that Intel should pay ▮▮▮▮▮▮▮▮ in reasonable royalty damages as a result of its alleged infringement of the '547 patent. ▮▮▮▮▮▮▮▮  Mr. Evans concluded that this is the amount that Intel would have agreed to pay for a license to the '547 patent during a hypothetical negotiation between the parties at the time of the first alleged infringement ▮▮▮▮▮▮▮▮  In calculating his total damages figure, the **only** numerical values that Mr. Evans considered were: (i) Intel's ▮▮▮▮▮▮▮▮ from its sales of the accused products; and (ii) the amounts

4

████████████████████████████[3]

###   1.      Mr. Evans's Reliance on Intel's ███████████████

First, Mr. Evans relied on Intel's ████████████████████████████

████████████████████████████████████████████

█████████████████ But Mr. Evans made no attempt to ████████████

████████████████████████████████████████████

████████████████████ Instead, he considered Intel's ████████

████████████████████████████████████████████

████████ Mr. Evans further stated that he used Intel's ████████

████████████████████████████████████████████

█████████████████████

###   2.      Mr. Evans's Reliance on ████████████████ Agreements

Next, although Intel produced ███████████ license agreements (Hirsch Decl. ¶ 22),[4]

Mr. Evans ████████████████ agreements and then ████████████████

████████████████████████████████████████████

████████████████—as relevant to his damages opinion. The ██ agreements that

Mr. Evans relied on were █████████████████████████████████

███████████████████ Each of the ██ agreements also ████████████████

████████████████████████████████████████████

─────────────────────

[3] Mr. Evans has not offered any opinions on, and AVM is not seeking, lost profits damages or any damages other than a reasonable royalty█████████████████████
[4] During the September 28, 2012 summary judgment hearing, the parties referenced ██ license agreements that Intel had produced. ████████████████████████████████ In total, however, Intel produced more than ██ agreements.

█████████████ The ████ agreements that Mr. Evans relied on are summarized below:



Mr. Evans testified ████████████████████████████████████

█████████████████████████████████████████████████



Still, he made no effort to account for the many economic and technological differences between the ▮▮▮▮▮ agreements and a hypothetical license that Intel and Mr. Tran would have negotiated for the '547 patent. Instead, Mr. Evans simply looked at the full amount of each agreement and concluded that "▮▮▮▮▮

### 3.    Mr. Evans's *Georgia-Pacific* "Analysis"

Finally, Mr. Evans considered the *Georgia-Pacific* factors as ▮▮▮▮▮ Rather than perform a *Georgia-Pacific* analysis to determine an appropriate royalty rate, Mr. Evans merely concluded that ▮▮▮▮▮

## III.   ARGUMENT

AVM bears the burden of establishing that its expert's testimony is admissible by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1983). To be admissible under Federal Rule of Evidence 702, an expert's opinion testimony must:   (i) be based on specialized knowledge, training, or experience that will assist the trier of fact; (ii) be

---

10 ▮▮▮▮▮

based on sufficient facts or data; (iii) be the product of reliable principles and methods; and (iv) reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702 & advisory committee notes; *see Daubert*, 509 U.S. at 589-97. "*[A]ny* step that renders the [expert's] analysis unreliable under the *Daubert* factors *renders the expert's testimony inadmissible.*" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994) (emphases in original). Mr. Evans's expert opinion concerning damages should be excluded because it fails to satisfy the *Daubert* standard for reliability in multiple ways.

### A.    Mr. Evans Improperly Relied on Intel's ███████████████████ To Calculate a Reasonable Royalty.

The Federal Circuit has made clear that a damages expert may use the defendant's total revenues from sales of the accused products to calculate reasonable royalty damages *only if* the "Entire Market Value Rule" is satisfied. Under that rule, a defendant may recover damages based on the value of an entire product containing several features only if "the feature patented constitutes *the basis* for customer demand." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (emphasis added). Recently, in *LaserDynamics, Inc. v. Quanta Comp., Inc.*, __ F.3d __, 2012 WL 3758093 (Fed. Cir. Aug. 30, 2012), the Federal Circuit emphasized that this test can only be met by showing that the patented feature *alone* causes customers to purchase the accused products. *Id.* at *12 ("It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential .... [P]roof that consumers would not want a laptop without [its many] features is not tantamount to proof that any one of those features alone drives the market for laptop computers."). If the patentee cannot satisfy the Entire Market Value Rule, then the "patentee ... must in every case give evidence tending to separate or apportion the defendant's profits and the patented features and the unpatented features." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011) (emphasis added).

8

Contrary to this precedent, Mr. Evans relied heavily on Intel's ███████████

████████████████████████████████████████████████████████████████████

███████████ Mr. Evans ███████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████ At the same time, however, Mr. Evans

acknowledged that ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████ Mr. Evans also admitted that ████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████

Mr. Evans's statement that he used Intel's ██████████████████████████

---

[11] Intel's damages experts have explained that ████████████████████████
████████████████████████████████████████████████████████████████████
█████████████████████████████████████████████

9

██████████████ cannot save his opinion. ████████████████████ The

Federal Circuit has expressly held that an expert who does not satisfy the Entire Market Value

Rule may **not** do this. *See Uniloc*, 632 F.3d at 1320-21 (" [T]he fact that the entire market value

was brought in only as a 'check' is of no moment.").

Accordingly, because Mr. Evans's reasonable royalty calculation improperly relies on

Intel's ██████████████ contrary to established damages law, it is unreliable and should be

excluded from trial. *See, e.g., Uniloc*, 632 F.3d at 1318-20 (affirming district court's grant of a

new trial on damages where patentee improperly relied on the entire market value rule, noting

that use of entire market value of accused products "skew[ed] the damages horizon for the

jury"); *Apple Inc. v. Samsung Elecs. Co.,* No. 11-CV-01846-LHK, 2012 WL 2571332, at *6

(N.D. Cal. June 30, 2012) (excluding damages expert testimony regarding apportionment of

profits because it was "contrary to the law"); *In re Novatel Wireless Securities Litigation*, 846 F.

Supp. 2d 1104, 1108-09 (S.D.Cal. 2012) (excluding expert opinion that was "incompatible" with

correct legal standard).[12]

### B. Mr. Evans Improperly Relied on █████████████████ ██████████ Agreements To Calculate Damages.

Setting aside Intel's ██████████████, the only numbers or dollar amounts that Mr.

Evans used to reach his damages conclusion are the amounts █████████████████████

████████████████ But Mr. Evans's reliance on these agreements is also flawed.

---

[12] AVM has argued that Mr. Evans may rely on Intel's ████████████████ because Intel's microprocessors are the "smallest saleable unit." Mr. Evans never offered that opinion. But even if the accused products are the "smallest saleable unit," AVM still may use the ████ ██████████████ by satisfying the Entire Market Value Rule or performing an apportionment analysis. *See Lucent*, 580 F.3d at 1338 (vacating damages award for patentee's failure to satisfy the Entire Market Value Rule even where only evidence was that patentee accused smallest saleable unit).

**1.    Mr. Evans Selected ████████████████████ Agreements by "Cherry Picking" ████████████████████.**

To begin with, Mr. Evans's methodology for selecting the ██ agreements that he relied on renders his entire opinion defective.  Intel produced ████████████ license agreements in response to AVM's requests for production.  (Hirsch Decl. ¶ 22.)  Of those ████████████

████████████████████████████████████████████████████████████████

████████████████████  But Mr. Evans never identified—either in his report or at his deposition—████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████  Mr. Evans also was unable to explain ████████████████████████

Indeed, when asked about ████████████████████████  Mr. Evans replied that ████

████████████████████████████████████████████████████████████

From those ██ licenses, Mr. Evans then selected ██ license agreements on which to base his opinion, calling them ████████████████████████████████████████

████████  The ██ agreements that Mr. Evans chose to rely on are all ████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  By any measure, this was "cherry picking."

Mr. Evans's unprincipled selection of the ████████████████████ agreements as the only relevant licenses clearly skewed his damages opinion in a way that artificially increased his total damages calculation.  From the ████████████ agreements, Mr. Evans concluded:  ████████

████████████████████████████████████████████████████████████████

11

[REDACTED] Had Mr. Evans reviewed the other agreements produced by Intel, he never would have reached that conclusion.  Intel [REDACTED]

[REDACTED] Mr. Evans did not discuss or distinguish any of these agreements.  Notably, one of the [REDACTED]

[REDACTED] Intel's licensing expert, Richard Donaldson, identified [REDACTED] additional license agreements in which Intel licensed technology that is comparable to the '547 patent [REDACTED]

[REDACTED] Mr. Evans did not consider any of these agreements before reaching his opinion [REDACTED]

Mr. Evans's unprincipled methodology for selecting and relying on the [REDACTED] agreements as the only relevant licenses thus renders his opinion unreliable.  *See, e.g.,* *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010) (excluding damages expert testimony where expert selectively relied on licenses requiring high royalty payments to "drive the royalty rate up to unjustified double-digit levels").

2.    **Mr. Evans Failed To Show That the [REDACTED]**

12

Mr. Evans's reliance on the ███████████ agreements is also flawed because those agreements are not comparable to what the parties in this case would have negotiated for a license to the '547 patent during the hypothetical negotiation. The Federal Circuit has made clear that a damages expert may rely on prior license agreements to calculate reasonable royalty damages only after establishing that the license agreements are comparable. The expert must: (i) demonstrate "how similar or dissimilar the patented technology" covered by the prior licenses is to the patent-in-suit, *Lucent*, 580 F.3d at 1331; and (ii) "account for the technological and economic differences" between the patent covered by the prior licenses and the patent-in-suit, *ResQNet*, 594 F.3d at 873. Mr. Evans has not come close to meeting that standard.

*First*, Mr. Evans relied exclusively ████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████ The relevance of litigation settlement agreements to a damages analysis is questionable to begin with because parties often pay higher settlement amounts to settle litigation. *See, e.g., LaserDynamics*, 2012 WL 3758093, at *20-21 (noting "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages"); *Deere & Co. v. Int'l Harvester Co.*, 710 F.2d 1551, 1557 (Fed. Cir. 1983) ("[A]s the … license was negotiated against a backdrop of continuing litigation and [defendant's] infringement … the district court could properly discount the probative value of the … license with regard to a reasonable royalty."). Indeed, the Federal Circuit has recently questioned the "propriety of using prior settlement agreements to prove the amount of a reasonable royalty," since non-litigation settlement agreements are "far more reliable indicators of what willing parties would agree to in a hypothetical negotiation." *LaserDynamics*, 2012 WL 3758093, at *20-21; *see also IP*

13

*Innovation LLC v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 691 (E.D. Tex. 2010) (noting that "agreements … entered into outside the context of litigation" are "appropriate as touchstones for determining an appropriate royalty rate").   That is especially true here where ███████████ ████████████████████████████████████████████████████████████████ ████ Mr. Evans's failure to consider ████████████████████████████████ ████████████████████████████████████████████████████ renders his opinion unreliable. *See, e.g., LaserDynamics*, 2012 WL 3758093, at *21 (excluding litigation settlement agreement that was "executed shortly before trial" and "reflect[ed] not the value of the claimed invention but the strong desire to avoid further litigation under the circumstances").

*Second*, Mr. Evans never accounted for the fact that ████████████████████ ████████████████████████████████ The Federal Circuit has recognized that licenses covering multiple patents are "vastly different" than a license to a single patent. *Lucent*, 580 F.3d at 1328.   It is only logical that a company would pay far more for a license that provides rights to dozens of inventions than it would for a license that covers a single patent.   The ████████████████████████ agreements provided ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ In addition, the ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ But Mr. Evans never considered that ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████ This further renders Mr. Evans's damages calculation unreliable. *See, e.g., Lucent*, 580 F.3d at 1328 (affirming new trial where patentee attempted to use a license to an "entire patent

14

portfolio" to establish a reasonable royalty for a single patent).

*Third*, Mr. Evans failed to account for other economic differences between the ██████

██████████████ agreements and a hypothetical license to the '547 patent.   A reasonable

royalty analysis must consider the value that the parties would have negotiated for a non-

exclusive, bare license to the '547 patent. *See Lucent*, 580 F.3d at 1328 (hypothetical negotiation

contemplates negotiation for license to asserted patent, not "multiple patents" covering "broad …

technologies"). But each of the ██████████████ agreements that Mr. Evans relied on



In his reasonable royalty analysis, Mr. Evans considered only ██████████████

██████████████████████████ His failure to ████████████

████████████████████████ renders his opinion unreliable.

*See, e.g., Trell v. Marlee Elec. Corp.*, 912 F.2d 1443, 1446 (Fed. Cir. 1990) (vacating reasonable

royalty award based on a prior license that "conveyed rights more broad in scope than those covered by [the patent-in-suit]"); *DataQuill Ltd v. High Tech Comp. Corp.*, No. 08cv543-IEG, 2012 WL 1284381, at \*9 (S.D. Cal. Apr. 16, 2012) (excluding evidence of prior license agreement "much larger in scope than the license that would have been reached at the hypothetical negotiation"); *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (vacating damages award where the prior licenses provided "no basis for comparing with [the defendant's] infringing sales" and did not "describe[] how the parties calculated each lump sum, the licensees' intended products, or how many products each licensee expected to produce").

     *Finally*, Mr. Evans failed to compare the differences between the technology of 

                                                                      agreements and the '547 patent.  AVM suggested in opposition to Intel's motion for summary judgment of no damages that

AVM's failure to provide any expert opinion regarding the technological comparability of the             agreements precludes reliance on those agreements to calculate reasonable royalty damages.  *See, e.g.*, *DataQuill.*, 2012 WL 1284381, at \*5 (excluding expert testimony where patentee failed to provide "any technical

expert testimony explaining the technology contained in the [licensed products] such that a basis

could be formed comparing them to [the accused product]").[13]

Even if someone had performed the underlying technological comparison (which they did

not), Mr. Evans still failed to account for the differences in the technology covered by the █████

████████████ agreements and the '547 patent in calculating a reasonable royalty.  Mr.

Evans acknowledged that ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████   That failure, again, renders Mr. Evans's opinion unreliable.  *See, e.g., ResQNet*, 594

F.3d at 873 (vacating damages where no evidence "accounted for the technological and

economic differences between those licenses and the [asserted] patent"); *Lucent*, 580 F.3d at

1328-32 (vacating damages award where patentee failed to introduce facts showing "how

valuable or essential" or "similar or dissimilar" the technology covered by prior license was

compared to the patent-in-suit).

AVM argued in opposition to Intel's motion for summary judgment of no damages that

████████████████████████████████████████████████████████████████████████

---

[13] Nor can Mr. Tran provide an expert opinion regarding the technological comparability of the
license agreements.  AVM never disclosed Mr. Tran as an expert, and Mr. Tran has not
submitted an expert report. ██████████████████████████████████████████

█████████████████████████████████████ But Mr. Evans did not set forth a single fact, data point, or measurement of speed to justify this claim. The sum and substance of his opinion is a naked assertion that █████████████████████████ ██████████████████████████ This type of conclusory allegation is insufficient as a matter of law. *See, e.g., LaserDynamics*, 2012 WL 3758093, at \*23 ("When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice.").

### C.   Mr. Evans Ignored Relevant Damages Evidence.

Without Intel's ███████████████████████████ agreements, Mr. Evans cannot point to any specific numbers, data, or dollar amounts to support his damages opinion. Indeed, further undermining the reliability of his opinion, Mr. Evans decided to entirely ignore other damages evidence.

*First*, Mr. Evans failed to assign any weight to ███████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ He claimed that, ███████████████████████████████████ ██████████████████████████████████ Past offers to the patent-in-suit, however, are highly relevant to damages. *See, e.g., Unisplay S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 519 (Fed. Cir. 1995) (finding that evidence of licensing terms that plaintiff had offered defendant for patent-in-suit "should carry considerable weight in

calculating a reasonable royalty rate"); *Oracle America, Inc. v. Google, Inc.*, 798 F. Supp. 2d 1111, 1121 (N.D. Cal. 2011) (patentee's prior offer is "real world" evidence relevant to the hypothetical negotiation).

   ***Second***, Mr. Evans did not attribute ***any*** relevance to ███████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████████████████ Mr. Evans conceded that the ██
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
Nevertheless, Mr. Evans ███████████████████████████████████████████████
███████████████████████████ Mr. Evans's refusal to consider ██████████████████████
████████████████████████████████████████████████████████████████████
██████████ further underscores the unreliability of his conclusions. *See, e.g.*, *IP Innovation*, 705 F. Supp. 2d at 691 (precluding expert testimony where expert relied on "irrelevant or unreliable

---

[14] Mr. Evans also ignored that: █████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
██████████████████████████████

evidence" while disregarding licenses "far more relevant" to the hypothetical negotiation).

**D.  Mr. Evans's Opinion Is Not Reliable Simply Because He Purported To Provide a *Georgia-Pacific* Analysis.**

AVM has argued that Mr. Evans's damages analysis is somehow salvaged by his mention of the *Georgia-Pacific* factors in his expert report. This is incorrect for two reasons.

*First*, Mr. Evans's *Georgia-Pacific* discussion relied on the same flawed evidence discussed above. ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████ Just as Mr. Evans's reliance on this evidence rendered his overall opinion unreliable, it also discredits the reliability of his *Georgia-Pacific* discussion.

*Second*, Mr. Evans admitted that ████████████████████████████████████████
████████████████████████████████████████████████ Indeed, Mr. Evans conceded in his expert report that ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████ Mr. Evans's use of the *Georgia-Pacific* factors to confirm his opinion, without more, cannot support a reasonable royalty. *See, e.g., Whitserve, LLC v. Comp. Packages, Inc.*, Nos. 2011-1206, 2011-1261, 2012 WL 3573845, at *14 (Fed. Cir. Aug. 7, 2012) (plaintiff may not rely on a *Georgia-Pacific* analysis where its expert merely "recit[es] each factor and make[s] conclusory remark[s]" that the factors "increase" damages).

**IV.  CONCLUSION**

Because Mr. Evans's damages opinion is unreliable and based on insufficient facts, the Court should preclude Mr. Evans from offering any damages opinion at trial.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

William F. Lee
Lauren B. Fletcher
Patrick M. Callahan
Adam S. Gershenson
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000

David C. Marcus
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 443-5312

Dated:  October 31, 2012
Public Version Dated: November 8, 2012
1082151/35902

By:  */s/ David E. Moore*
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com
    bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

21

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**CERTIFICATE OF SERVICE**

I, David E. Moore, hereby certify that on November 8, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on November 8, 2012, the attached document was Electronically Mailed to the following person(s):

Richard K. Herrmann
Mary B. Matterer
Kenneth L. Dorsney
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
rherrmann@morrisjames.com
mmatterer@morrisjames.com
kdorsney@morrisjames.com

Edward W. Goldstein
Alisa A. Lipski
Gregg Goldstein
Goldstein & Lipski PLLC
1177 West Loop South, Suite 400
Houston, TX 77027
egoldstein@gliplaw.com
alipski@gliplaw.com
ggoldstein@gliplaw.com

Matthew C. Lapple
Lapple IP Law, P.C.
18101 Von Karman, 3rd Floor
Irvine, CA 92612
matt@lappleiplaw.com

By:   */s/ David E. Moore*
      Richard L. Horwitz
      David E. Moore
      Bindu A. Palapura
      POTTER ANDERSON & CORROON LLP
      Tel: (302) 984-6000
      rhorwitz@potteranderson.com
      dmoore@potteranderson.com
      bpalapura@potteranderson.com

977285 / 35902