## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AVM TECHNOLOGIES, LLC,<br>a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>INTEL CORPORATION,<br>a Delaware Corporation,<br><br>Defendant. | C.A. No. 10-610-RGA<br><br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC VERSION** |

## DEFENDANT INTEL CORPORATION'S REPLY IN SUPPORT OF ITS *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF LARRY EVANS

OF COUNSEL:

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000

David C. Marcus
WILMER CUTLER PICKERING
   HALE AND DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 443-5312

Dated: December 17, 2012
PUBLIC VERSION
Dated: December 28, 2012
1088034/35902

Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899
Tel: (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

**REDACTED PUBLIC VERSION**

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  MR. EVANS'S RELIANCE ON INTEL'S ██████████ IS IMPROPER. .................2

III. MR. EVANS'S RELIANCE ON THE ████████████████████ AGREEMENTS IS IMPROPER. ........................................................................5

IV. AVM SHOULD NOT BE GIVEN LEAVE TO AMEND MR. EVANS'S ANALYSIS. .......10

V.  CONCLUSION.........................................................................................10

REDACTED PUBLIC VERSION

## TABLE OF AUTHORITIES

**Federal Cases**

*Advanced Med. Optics, Inc. v. Alcon, Inc.,*
2005 WL 782809 (D. Del. Apr. 7, 2005)...................................................................................8

*Broadcom v. Emulex*
2011 U.S. Dist. LEXIS 154416 (C.D. Cal. Dec. 13, 2011) ......................................................5

*Cornell University v. Hewlett-Packard,*
609 F. Supp. 2d 279 (N.D.N.Y. 2009).................................................................................4, 5

*DataQuill Ltd. V. High Tech Comp. Corp.,*
2012 WL 1284381 (S.D. Cal. Apr. 16, 2012)..........................................................................9

*Devex Corp. v. G.M. Corp.,*
667 F.2d 347 (3d Cir. 1981)...................................................................................................10

*Garretson v. Clark,*
111 U.S. 120 (1884)..............................................................................................................3, 4

*Garretson v. Clark,*
10 F. Cas. 40 (C.C.N.D.N.Y. 1878).........................................................................................3

*LaserDynamics v. Quanta,*
694 F.3d 51 (Fed. Cir. 2012)....................................................................................................3

*Lucent v. Gateway,*
580 F.3d 1301 (Fed. Cir. 2009)........................................................................................ Passim

*Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.,*
2011 WL 839411 (N.D. Cal. Mar. 7, 2011).............................................................................8

*Uniloc, USA, Inc. v. Microsoft,*
632 F.3d 1292 (Fed. Cir. 2011)........................................................................................3, 4, 5

**Rules**

Fed. R. Civ. P. 26(a)(2)(B) ...............................................................................................7, 8

REDACTED PUBLIC VERSION

## I. INTRODUCTION

In its opening *Daubert* brief, Intel demonstrated that the testimony of AVM's damages expert Larry Evans should be excluded because his methodology is contrary to Federal Circuit law. Specifically, Mr. Evans impermissibly calculated damages by: (i) using Intel's ███ ███████████ despite admitting that AVM cannot satisfy the Entire Market Value Rule; and (ii) relying on ████████████████ without setting forth any methodology for selecting those agreements from the more than ███ agreements that Intel produced, and without accounting for the fact that each of the ███ agreements covered technology that is not related to the '547 patent ██████████████████████.

After Intel filed its opening brief, AVM retained new lead counsel for the third time and requested a three-week extension of the due date for its *Daubert* opposition—to which Intel agreed. AVM used this time to create new "evidence" in an effort to salvage Mr. Evans's opinion, including a 13-page declaration from its technical expert Joseph McAlexander. AVM's new evidence (and the arguments based on that new evidence) comes far too late, and, as set forth in Intel's Motion to Strike, should be excluded. In any event, AVM's new arguments would not save Mr. Evans's unreliable and improper analysis.

First, with respect to Mr. Evans's use of Intel's ████████████, AVM does not dispute that it cannot satisfy the Entire Market Value Rule. Instead, AVM argues that the accused Intel products are the "smallest saleable unit" and that it is therefore not required to satisfy the Entire Market Value Rule. AVM never made this "smallest saleable unit" argument in its discovery responses, its expert reports, or the deposition testimony of its experts. But, even if it had, AVM's argument is legally incorrect. As set forth below, the Federal Circuit has expressly found that the Entire Market Value Rule applies in *every* case, including where the plaintiff accuses the "smallest saleable unit."

REDACTED PUBLIC VERSION

Second, with respect to Mr. Evans's reliance on ████████████████ agreements, AVM concedes that Mr. Evans did not consider more than ██ licenses that Intel produced, that he relied on ██████████ agreements without reviewing ██████████ agreements available to him, that ██ of the ██ agreements ██████████████████████ ████, that none of the agreements cover "dynamic logic circuits" (the subject of the '547 patent), and that the ██ agreements are ██████████████████████████ agreements of which Mr. Evans is aware.  Instead, attempting to save Mr. Evans's opinion, AVM relies on a new declaration from Mr. McAlexander (rather than a declaration from Mr. Evans or any opinion set forth in Mr. Evans's report or deposition) and asserts that Mr. Evans can rely on the ██████████████ as the "most comparable" agreements to a license covering the '547 patent. But Mr. Evans himself conceded in his deposition that ██████████ ████████████████████████████████████████████████████████████████.  In any case, AVM should not be permitted to overcome a *Daubert* challenge by creating and relying on new evidence (like Mr. McAlexander's eleventh-hour declaration) that is generated long after the close of discovery.

For these reasons and the reasons set forth in Intel's opening brief, Mr. Evans's damages opinion should be excluded from trial.

## II.   MR. EVANS'S RELIANCE ON INTEL'S ████████████ IS IMPROPER.

AVM does not dispute that Mr. Evans used all of Intel's ██████ to calculate damages without satisfying the Entire Market Value Rule.  (██████████████████████████ ████████████████████████████ ████████████ ██████

████████████████████████████[1] Instead, AVM argues that Mr. Evans is

permitted to rely on ███████████ because the accused microprocessors are the "smallest

saleable unit." (*Id.* at 9-10.) AVM is incorrect.

AVM relies primarily on *LaserDynamics v. Quanta*, 694 F.3d 51 (Fed. Cir. 2012). But

*LaserDynamics* did not create an exception to the Entire Market Value Rule that would allow a

patentee to avoid apportionment where the accused product is the "smallest saleable unit." In

fact, *LaserDynamics* repeatedly cites the holdings of *Garretson v. Clark*, 111 U.S. 120, 121

(1884), *Lucent v. Gateway*, 580 F.3d 1301, 1332-33, 1336 (Fed. Cir. 2009), and *Uniloc, USA,

Inc. v. Microsoft*, 632 F.3d 1292, 1318-20 (Fed. Cir. 2011), all of which require the plaintiff to

satisfy the Entire Market Value Rule *even if the patentee accuses the smallest saleable unit.*

See *LaserDynamics*, 694 F.3d at 67-69.

In *Garretson*, the plaintiff had a patent for "improved mop-head[s]" but sought damages

based on the profits of the entire mop—*i.e.*, the smallest saleable unit. *Garretson v. Clark*, 10 F.

Cas. 40, 41,43 (C.C.N.D.N.Y. 1878). The district court awarded only nominal damages because

the plaintiff failed to show that the mop's success was attributable to the patented improvement.

*Id.* at 41-42. The Supreme Court affirmed and held that even though the plaintiff accused the

smallest saleable unit, it was required to apportion the defendant's revenues and could rely on

only those revenues specifically attributable to the asserted patent:

> The patentee . . . must *in every case* give evidence tending to separate or apportion the
> defendant's profits and the patentee's damages between the patented feature and the
> unpatented features . . . or he must show, by equally reliable and satisfactory evidence,
> that the profits and damages are to be calculated on the whole machine, for the reason
> that the entire value of the whole machine as a marketable article, is properly and legally

---

[1]     AVM's suggestion that Mr. Evans apportioned revenues through his *Georgia-Pacific*

████████████████████████████████████████████████
████████████████████████████████

attributable to the patented feature.

*Garretson*, 111 U.S. at 121 (quoting 10 F. Cas. at 44) (emphasis added).  The Supreme Court's

decision would make no sense if there were an exception to the Entire Market Value Rule

whenever a plaintiff accuses the smallest saleable unit.

The Federal Circuit reached the same conclusion in *Lucent* and *Uniloc*.  In *Lucent*, the

accused product was Microsoft Outlook.  The only evidence was that Outlook is the smallest

saleable unit.  Still, the Federal Circuit held that the plaintiff could rely on all the defendant's

revenues *only if* it satisfied the Entire Market Value Rule.  *See Lucent*, 580 F.3d at 1337 ("The

first flaw with any application of the entire market value rule in the present case is the lack of

evidence demonstrating the patented method of the Day patent as the basis—or even a

substantial basis—of the consumer demand for Outlook.").  And in *Uniloc*, the plaintiff accused

Microsoft software—the smallest saleable unit.  But the Court still required apportionment to

identify the value of the patented features within that software.  632 F.3d at 1318-21.

*Cornell University v. Hewlett-Packard*, 609 F. Supp. 2d 279 (N.D.N.Y. 2009) (which was

decided before *Lucent* and *Uniloc*) also supports Intel's position.  In *Cornell*, the patentee

attempted to use the defendant's revenues from sales of "CPU bricks" to calculate damages.

These products included both (1) a processor with the patented "IRB" feature, and (2) other

unpatented structures.  The court disapproved and said the patentee should have started its

damages calculation with "[t]he logical and readily available alternative," which was "the

smallest sal[e]able infringing unit with close relation to the claimed invention—namely the

processor itself."  *Id.* at 288.  The court did *not* say the patentee was automatically entitled to use

all revenues from the processor (the smallest saleable unit).  On the contrary, the court held that

even if the patentee limited its claim to the processor, it could use all revenues from the

4

REDACTED PUBLIC VERSION

defendant's processor sales *only if it satisfied the Entire Market Value Rule:*

> [I]n this case, ***application of the entire market value rule*** might enable Cornell to obtain royalties not only on the claimed features of the IRB but also on sales of processors . . . ."

*Id.* at 286 (emphasis added).

Finally, AVM relies on *Broadcom v. Emulex*, 2011 U.S. Dist. LEXIS 154416 (C.D. Cal. Dec. 13, 2011), an unpublished district court opinion from California. But there, the parties both *agreed* to use revenues from the smallest saleable unit as the royalty base. *See id.* at *17-18. The parties simply disagreed about what the smallest saleable unit was. Neither party invoked cases like *Garretson*, *Uniloc*, and *Lucent* to argue that apportionment of the smallest saleable unit was necessary. That is not the case here.

In short, AVM's proposed exception to the Entire Market Value Rule is directly contrary to Supreme Court and Federal Circuit precedent. Accordingly, Mr. Evans's use of ▮▮▮▮ ▮▮▮▮ to calculate damages is methodologically flawed and requires that his opinion be excluded. *Uniloc*, 632 F.3d at 1318-20; *Lucent*, 580 F.3d at 1336-38.

## III. MR. EVANS'S RELIANCE ON THE ▮▮▮▮▮▮▮ AGREEMENTS IS IMPROPER.

There is no dispute as to what Mr. Evans did to select the ▮▮▮▮▮▮ agreements. AVM concedes that:

- Intel produced more than ▮▮ agreements ▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- Mr. Evans did not look at *more than* ▮▮ of those agreements ▮▮▮▮▮▮▮
  ▮▮▮▮,[2]

- Mr. Evans picked ▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮; and

- The ▮▮ agreements that Mr. Evans relied on all ▮▮▮▮▮▮▮▮▮▮▮

---

[2] ▮▮▮▮▮▮▮▮▮▮ 19 refer to the Exhibits filed with Intel's opening *Daubert* brief. ▮▮
▮▮▮▮▮▮▮▮▮▮) Exhibits 20 and 21 refer to the Exhibits attached to the Declaration of Jordan L. Hirsch (dated December 17, 2012), filed concurrently herewith.

REDACTED PUBLIC VERSION



Mr. Evans conceded that he also did not perform *any analysis* to compare the benefits

and value of the technology covered by the █████████ agreements to the '547 patent:



Similarly, Mr. McAlexander's expert reports nowhere mention the █████████ or the

patents licensed by them—not even in the list of materials he had considered. (*See* Exs. 18

(Infringement Report), 19 (Validity Rebuttal Report).)  At his deposition, Mr. McAlexander



_____

[3]   AVM argues that Mr. Evans's conclusory assertion that ████████████████
████████████.  But the Federal Circuit has made clear that such naked conclusions, without an
analysis of "how similar or dissimilar" the agreements are to an agreement covering the patent-
in-suit, are simply not enough. *See Lucent*, 580 F.3d at 1330-31.

REDACTED PUBLIC VERSION

███ ████████████████
█ ████████████████

████████████████████████████ In fact, Mr.

McAlexander admitted ████████████████████████████

████████████████████████████ Thus,

when expert discovery closed, AVM had not provided any real or specific evidence of economic

and technological comparability between the ███████ agreements and the '547 patent.

Rather than point to any opinion provided by their experts during discovery, AVM faults

Intel for not having questioned Mr. McAlexander at his deposition about opinions that were not

disclosed in his two expert reports and agreements that were not included on his list of materials

considered. ███████ But Mr. McAlexander was required to set forth in his reports the

opinions that he intends to offer at trial and the documents on which he intends to rely. *See* Fed.

R. Civ. P. 26(a)(2)(B) (expert report "must contain: (i) a complete statement of all opinions the

witness will express and the basis and reasons for them").

Intel also was not required to ask Mr. McAlexander about conversations that AVM now

asserts Mr. McAlexander had with Mr. Evans regarding the ████████ agreements. Mr.

McAlexander did not mention these conversations a single time in his expert reports or his

deposition. Further, it is Mr. Evans—not Mr. McAlexander—who is offering an opinion

regarding the ████████ agreements and must have a basis to establish comparability. And

when Intel asked Mr. Evans about any discussions he had with Mr. McAlexander, Mr. Evans

testified that ████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

AVM cannot save its experts' failure to perform and disclose a comparability analysis during discovery through the last-minute introduction of new facts and new opinions by Mr. McAlexander. *See Advanced Med. Optics, Inc. v. Alcon, Inc.*, 2005 WL 782809, at *11 (D. Del. Apr. 7, 2005) (under Rule 26(a)(2)(B), an expert report that does not contain "the basis and reasons' for [the] expert's opinions" is deficient and cannot be saved by a "last ditch declaration" submitted after the close of discovery); *Sanofi-Aventis Deutschland GMBH v. Genentech, Inc.*, 2011 WL 839411, at *26-27 (N.D. Cal. Mar. 7, 2011) (excluding evidence submitted for the first time in an Opposition to a Motion for Summary Judgment because defendants were not afforded the opportunity to investigate the theory through discovery or during depositions).

But even accepting the new opinion provided by Mr. McAlexander, Mr. Evans's use of the ██████████ to calculate damages remains fatally flawed. First, AVM still has not explained how Mr. Evans selected which of the ██ Intel license agreements to review (or not to review), how he identified the ██████████ agreements from the agreements he allegedly reviewed, and how he (not) coincidentally chose ██ of the ██████████ agreements that he is aware of. Without any articulated method, Mr. Evans should not be permitted to rely on these agreements. *See* Ex. 20, *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, Nos. 2011-1396, -1554, slip op. at 24-25 (Fed. Cir. Nov. 21, 2012) (an expert's *ipse dixit* that "[i]t is so because I, the expert, say it is so . . . is precisely the kind of opinion that *Daubert, Kumho,* and *Joiner* require the district courts to exclude").

Second, Mr. Evans still has not established that the ██████████ agreements are technologically comparable to the '547 patent. AVM argues that Mr. Evans can rely on Mr.

8

REDACTED PUBLIC VERSION

McAlexander's new assertion that the agreements are technologically comparable to the '547 patent because ██████████████████ But even Mr. Tran, one of the named inventors of the '547 patent, admits that ████████████████████████████████████ ██████████████ And AVM still has no explanation for Mr. Evans's and Mr. McAlexander's failure to look at all the patents covered by the ████████ agreements.[4] AVM cannot establish technological comparability without even reading the patents covered by the agreements it relies on. *DataQuill Ltd. V. High Tech Comp. Corp.*, 2012 WL 1284381, at *5 (S.D. Cal. Apr. 16, 2012) (excluding expert testimony where expert failed to provide "a basis . . . for comparing [the licensed technology] to the [accused technology]").

Third, Mr. Evans still has not accounted for the economic differences between the ████ ██████ agreements and a license covering the '547 patent. AVM's only explanation for why Mr. Evans relied exclusively on ██████████ agreements is that he determined that Intel ████████████████████████████████████████████████████████ But Mr. Evans could not have reached that conclusion in any reasoned way without having reviewed more than ██ agreements, including ████████████ agreements.

Similarly, AVM's only attempt to address the fact that the ██████████ agreements cover ████████████████████████████████████████████████ is a naked assertion that Mr. Evans concluded that all of these ████████████ had at most a "de minimis" value. ████████████████████ This conclusory allegation is not nearly enough to satisfy the *Daubert* reliability standard. *See Lucent*, 580 F.3d at 1328 (affirming grant of new trial where patentee attempted to use a license to an "entire patent portfolio" covering "broad

---

[4] ██████ ████████████████████████████████████████████
██████████████████████████████████████████████████████████████

technologies" to establish a reasonable royalty to a single patent).

Mr. Evans simply selected ███████████ agreements and asserted that the drastic differences between those agreements and an agreement covering the '547 patent do not matter. This unprincipled methodology renders Mr. Evans's opinion unreliable.

## IV. AVM SHOULD NOT BE GIVEN LEAVE TO AMEND MR. EVANS'S ANALYSIS.

Finally, effectively conceding the insufficiency of Mr. Evans's analysis, AVM asserts that it is "statutorily entitled" to damages and should be permitted to amend Mr. Evans's analysis. AVM is not "statutorily entitled" to damages. As recently as November 2012, the Federal Circuit affirmed a district court opinion precluding a plaintiff from presenting *any evidence* of damages at trial where its damages expert's testimony was based on "flawed and unreliable" evidence. *See* Ex. 20, *ePlus*, slip op. at 25.[5]

AVM's request for leave to amend is similarly flawed. AVM had more than two years to prepare its damages analysis. Still, AVM chose to rely on all of ███████████ without satisfying the Entire Market Value Rule, did not make any effort to apportion Intel's revenues, ignored more than █ license agreements that Intel produced, including ███████████ agreements, and relied on ███████████ agreements without providing "any analysis" of the technological or economic comparability of the agreements to a license to the '547 patent. AVM's request for leave to fix these errors now should be rejected.

## V. CONCLUSION

For the reasons stated above and in Intel's opening memorandum, Intel respectfully requests that the Court preclude Mr. Evans from offering any damages opinion at trial.

---

[5] The Third Circuit has reached the same conclusion. *See Devex Corp. v. G.M. Corp.*, 667 F.2d 347, 363 (3d Cir. 1981) ("[T]here must at the least be enough evidence in the record to allow the factfinder to formulate a royalty. Here . . . there was insufficient evidence . . . Thus, plaintiffs are not entitled to collect any royalty . . .").

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

William F. Lee
Lauren B. Fletcher
Jordan L. Hirsch
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel:  (617) 526-6000

David C. Marcus
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
Tel: (213) 443-5312

Dated:  December 17, 2012
PUBLIC VERSION
Dated:  December 28, 2012
1088034/35902

By: /s/ David E. Moore
    Richard L. Horwitz (#2246)
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, Delaware 19899
    Tel:  (302) 984-6000
    rhorwitz@potteranderson.com
    dmoore@potteranderson.com
    bpalapura@potteranderson.com

*Attorneys for Defendant Intel Corporation*

11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on December 28, 2012, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on December 28, 2012, the attached document was Electronically Mailed to the following person(s):

Richard K. Herrmann
Mary B. Matterer
Kenneth L. Dorsney
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE 19899-2306
rherrmann@morrisjames.com
mmatterer@morrisjames.com
kdorsney@morrisjames.com

Edward W. Goldstein
Goldstein Law, PLLC
710 N. Post Oak, Suite 350
Houston, TX 77024
egoldstein@gliplaw.com

Matthew C. Lapple
Lapple IP Law, P.C.
18101 Von Karman, 3rd Floor
Irvine, CA 92612
matt@lappleiplaw.com

David Boies
Rosanne C. Baxter
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504
dboies@bsfllp.com
rbaxter@bsfllp.com

Patrick M. Lafferty
D. Michael Underhill
Richard S. Meyer
Edward H. Takashima
Boies, Schiller & Flexner LLP
5301 Wisconsin Avenue, NW
Washington, DC 20015
plafferty@bsfllp.com
munderhill@bsfllp.com
rmeyer@bsfllp.com
etakashimia@bsfllp.com

By:  */s/ David E. Moore*         
Richard L. Horwitz
David E. Moore
Bindu A. Palapura
POTTER ANDERSON & CORROON LLP
Tel:  (302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com

977285 / 35902

2