IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| AVM TECHNOLOGIES, LLC, a Delaware Limited Liability Company : : : Plaintiff, : : v. : : INTEL CORPORATION, a Delaware Corporation : : Defendant. | Civil Action No. 10-610-RGA |

## MEMORANDUM OPINION

Richard K. Herrmann, MORRIS JAMES LLP, Wilmington, DE; David Boies, Roseanne C. Baxter, BOIES, SCHILLER & FLEXNER LLP, Armonk, NY; D. Michael Underhill, Richard S. Meyer, Edward H. Takashima, Patrick M. Lafferty, BOIES, SCHILLER & FLEXNER LLP, Washington, DC; Matthew C. Lapple, LAPPLE IP LAW, P.C., Irvine, CA.

    Attorneys for Plaintiff AVM Technologies, LLC.

Richard L. Horowitz, David E. Moore, POTTER ANDERSON & CORROON LLP, Wilmington, DE; William F. Lee, Lauren B. Fletcher, WILMER CUTLER PICKERING HALE AND DORR LLP, Boston, MA; David C. Marcus, WILMER CUTLER PICKERING HALE AND DORR LLP, Los Angeles, CA.

    Attorneys for Defendant Intel Corporation.

January 4, 2012

1

*[signature]*
ANDREWS, U.S. DISTRICT JUDGE:

Plaintiff AVM Technologies, LLC filed this patent infringement action against Defendant Intel Corporation on July 16, 2010. (D.I. 1). AVM alleges that Intel infringes U.S. Patent No. 5,859,547 ("the '547 patent"). (D.I. 1). The '547 patent, entitled "Dynamic Logic Circuit," claims an improved dynamic logic circuit "that has increased speed and reduced power." '547 patent at col. 2 ll. 64-65. Additionally, the "power and speed of the circuit are substantially constant regardless of the number of inputs the circuit contains." *Id.* at col. 2 ll. 65-67.

On May 15, 2012, AVM submitted an expert report prepared by Larry Evans relating to the damages to which AVM asserts it is entitled as compensation for Intel's alleged infringement of the '547 patent. In that report, Mr. Evans opines that AVM is entitled to reasonable royalty damages of $150 to $300 million "or more." (D.I. 163 at Ex. 14). Presently before the Court is Intel's *Daubert* Motion to Exclude the Testimony of Larry Evans. (D.I. 191). The motion has been fully briefed (D.I. 192, 206, 212).[1]

## II.   LEGAL STANDARDS

AVM bears the burden of establishing that its expert's testimony is admissible by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1983). To be admissible under Federal Rule of Evidence 702, an expert's testimony must: (i) be based on specialized knowledge, training, or experience that will assist the trier of fact; (ii) be based on sufficient facts or data; (iii) be the product of reliable principles and methods; and (iv) reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702 & advisory

---

[1] Intel also filed a Motion for Summary Judgment of No Damages (D.I. 161). The motion was fully briefed (D.I. 162, 176, 182) and oral argument was held on September 28, 2012.

2

committee notes; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-97 (1993). "*[A]ny* step that renders the [expert's] analysis unreliable under the *Daubert* factors *renders the expert's testimony inadmissible.*" *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

### III. DISCUSSION

Intel argues that Mr. Evans' expert opinion concerning damages should be excluded because it fails to satisfy the *Daubert* standard for reliability. Specifically, Intel asserts that Mr. Evans' calculation of a reasonable royalty rate violates the entire market value rule because he made no effort to apportion the percentage of Intel's accused revenues that is attributable to the '547 patent. Intel also challenges Mr. Evans' use of four Intel litigation settlement agreements on the basis that he did not compare the value of the technology covered by the four licenses on which he relies and the value of the '547 patent. Intel also notes that three of the four agreements are portfolio licenses and, therefore, are not comparable to a license for a single patent. Finally, Intel challenges Mr. Evans' opinion on the grounds that he did not rely on any evidence other than Intel's total revenues or the four settlement agreements.

AVM responds that Mr. Evans did not use the entire market value rule to determine a reasonable royalty rate. AVM further asserts that, even if Mr. Evans had used the entire market value rule to perform his calculation, it would not be improper because the accused Intel processors are the smallest saleable unit. With respect to its use of the four litigation settlement agreements, AVM responds that the license agreements were specifically chosen because they involved technology similar to the '547 patent. AVM also points out that one of the licenses on which it relies involved only a single patent.

3

Upon a finding of infringement, the court must award damages "adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use of the invention by the infringer." 35 U.S.C. § 284. The court may hear "expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." *Id.* The patentee bears the burden of proving damages. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011) (citing *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2004)). To meet this burden the patentee must "'sufficiently [tie the expert testimony on damages] to the facts of the case.'" *Id.* (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993)).

As the Federal Circuit recently noted, "[w]here small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics v. Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). Thus, the general rule is that royalties will be based on the "'smallest salable patent-practicing unit.'" *Id.* (quoting *Cornell Univ. v. Hewlett-Packard Co.*, 609 F.Supp.2d 279, 283, 287-88 (N.D.N.Y. 2009)).

The entire market value rule is an exception to this general rule. *Id.* The patentee may rely on the entire market value of the accused product if the patentee demonstrates that "the patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts.'" *Uniloc*, 632 F.3d at 1318 (quoting *Lucent*, 580 F.3d at 1336). The Federal Circuit has emphasized that this test can only be met by showing that the patented feature alone causes customers to purchase the accused products. *LaserDynamics*, 694 F.3d at 68 ("It is

4

not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential . . .. [P]roof that consumers would not want a laptop without [its many] features is not tantamount to proof that any of those features alone drives the market for laptop computers."). If the patentee cannot satisfy the entire market value rule, then the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative." *Uniloc*, 632 F.3d at 1318.

There is support for both sides in *Laser Dynamics*. AVM seizes upon the language suggesting that the smallest saleable patent-practicing unit should be the basis for determining a royalty base. *LaserDynamics*, 694 F.3d at 67 ("[I]t is generally required that royalties be based not on the entire product, but instead on the 'smallest salable patent-practicing unit.'"). Since Mr. Evans used the accused microprocessors as his royalty base, AVM argues that is the end of the analysis. Intel seizes upon the discussion of "Outlook" and the reference to *Lucent*. "Outlook" is the smallest saleable unit, but it has many features (or "components"). That one "Outlook" feature infringes does not mean that the sales of "Outlook" thus become the royalty base. In other words, the "entire market value rule" can apply to a smallest saleable patent practicing unit when the smallest saleable patent practicing unit is itself made up of multiple components.

In my opinion, Intel has the better of this argument. The use of a saleable unit that is greater than the patented feature is going to introduce *Uniloc* error when the patented feature is a "date picker" whether the saleable unit is a computer loaded with "Outlook" or simply "Outlook." The *Uniloc* error will be greater with the computer loaded with "Outlook" than with

5

"Outlook" alone, but the difference in error is one of degree, not of kind. Further, as *Laser Dynamics* holds, the difficulty in determining a royalty base in a situation such as this one with dynamic logic circuits is not a reason to accept an unreliable method.

I gather that dynamic logic circuit(s) may be an important part of a microprocessor. It is completely unclear to me how many other important parts there are, although my sense is that there are many. Assuming for the sake of argument that dynamic logic circuits are the single most important part of Intel's microprocessors, it is still a long haul to conclude that they "drive demand" for the entire microprocessor.

In my opinion, Mr. Evans' report provides little, if any, basis for allowing his testimony about a royalty based upon Intel's sales of microprocessors.

With respect to the license agreements, Federal Circuit precedent is clear that AVM must show that the prior licenses are truly comparable to the license that the parties would have negotiated for the asserted patent before introducing this evidence to the jury. *See ResQNet v, Lansa, Inc.*, 594 F.3d 860, 871 (Fed. Cir. 2010). First, the plaintiff must show that the scope of the prior license agreements that it intends to rely on is comparable to the scope of the license the parties would negotiate for the patent-in-suit. *See Lucent*, 580 F.3d at 1328. This means that a patentee may not argue that prior licenses granting rights to entire portfolios of patents are comparable to a license that the parties would have negotiated for a single asserted patent. *See Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1446-47 (Fed. Cir. 1990) (damages in a single patent case may not be based on a prior license that "encompassed the right to other inventions" and not just a single patent). Second, the patentee must establish that the technology and value of the patents licensed in the prior agreements are comparable to the technology and value of the

patent-in-suit. *See Lucent*, 580 F.3d at 1331.

This is a single patent case. In contrast, three of the four license agreements AVM relies on (MicroUnity, Intergraph, and Transmeta) gave Intel a license to entire patent portfolios that included dozens of patents. (D.I. 164 at Ex. 10, Evans Dep. at 192:2-5, 216:8-11, 226:4-8). No reasonable juror could consider these broad portfolio license agreements to be comparable in scope to a license for only the '547 patent. This leaves only the WARF agreement, which was also the result of litigation. Mr. Evans' expert report does not indicate that he performed any analysis to compare the benefits and value of the technology covered by this agreement, and he conceded as much at his deposition. (D.I. 164 at Ex. 10, Evans Dep. at 238:5-10).

While I am thus of the opinion that Mr. Evans' testimony about damages should be entirely excluded, I also believe that my final decision on the matter would be better informed if I heard live testimony, subject to cross-examination, from Mr. Evans, before the beginning of trial, and I will schedule a date and time for such a hearing.